IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA SASS, | ) | CASE NO. 4:09-CV-2732 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to consent of the parties (Doc. 13).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Melissa Sass' application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION and PROCEDURAL HISTORY

On May 30, 2006, Plaintiff protectively filed an application for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income, alleging that she became disabled on June 1, 2002 and July 1, 2002, respectively, as result of suffering from syringomyelia, anxiety, depression and headaches (Tr. 100-08, 130).  Plaintiff's date last insured for purposes of her Disability Benefits application was March 31, 2008 (Tr. 126).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr.

49-54, 58-65).  Plaintiff timely requested and was granted an administrative hearing (Tr. 66-68).

On February 10, 2009, Plaintiff appeared with counsel and testified at a hearing held before

Administrative Law Judge Wayne Stanley (the "ALJ" or "ALJ Stanley") (Tr. 17-44).  Vocational

expert, William H. Reed, also testified at the hearing (Tr. 40-44).

The ALJ issued a written decision on March 3, 2009, in which he found at Step Four of

the five-step sequential evaluation[1] that Plaintiff retained the residual functional capacity

("RFC") to perform the full range of sedentary work existing in significant numbers in the

national economy and, therefore, was not disabled (Tr. 9-16).  Plaintiff requested review of the

------

[1]  The Social Security Administration regulations require an ALJ to follow a five-step
sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a),
416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is
not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be
severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a
severe impairment that has lasted or is expected to last for a continuous period of
at least twelve months, and her impairment meets or equals a listed impairment,
claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant
work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant
work, if other work exists in the national economy that accommodates her
residual functional capacity and vocational factors (age, education, skills, etc.),
she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

ALJ's decision from the Appeals Council (Tr. 5).  Before the Appeals Council had rendered a decision, Plaintiff submitted evidence of a functional capacity examination completed on April 28, 2009, to the Appeals Council (Tr. 4).  Plaintiff did not present this evidence at the hearing before the ALJ.  On September 18, 2009, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 1-3).  Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was thirty-seven years old at the time of the ALJ's decision (Tr. 100).  She received her GED in 1994 and completed a medical secretary program at Trumbull Business College (Tr. 25, 135).  She has past relevant experience working as a cashier, secretary, medical secretary, and a unit clerk (Tr. 41-42, 131).

## II.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial

3

evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See* *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See* *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See* *Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See* *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)

## IV.  ANALYSIS

After review of the evidence, ALJ Wayne Stanley determined that Sass was not disabled under the Social Security regulations. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2002 (Tr. 11). At step two, the ALJ determined that Sass had the following severe impairments: T4 spinal cord syrinx, degenerative disc disease of the lumbar spine, and cervical and lumbar strain (Tr. 11). However, at step three, ALJ Stanley ruled that Plaintiff's severe impairments did not individually or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). Before moving to step four, the ALJ held that Sass had the RFC to perform the full range of sedentary work (Tr. 13). Upon this finding, the ALJ ruled at step four that Sass was capable of performing her past relevant work as a secretary, and therefore, was not disabled (Tr. 15).

Plaintiff challenges the ALJ's ruling on several grounds.  First, Plaintiff argues that ALJ Stanley failed to properly articulate a valid basis for rejecting the opinions of Plaintiff's treating sources.  Specifically, Plaintiff suggests that the ALJ rejected the opinions of Drs. Sinoff, Dambrogio, and Franklin.  Second, Plaintiff contends that the ALJ improperly found Plaintiff's testimony to be incredible.  Third, Sass maintains that substantial evidence does not support the ALJ's determination that Plaintiff could return to her past relevant work as a secretary.

### A.  Treating Physicians' Opinions

When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The treating source doctrine recognizes that  physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(d)(2).  Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or, are inconsistent with the other substantial evidence in the record.  *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table).  When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion.  *Wilson*, 378 F.3d at 544.  These factors include the length of the treatment

relationship and the frequency of examination, the nature and extent of the treatment relationship,

the supportability of the opinion, and the physician's specialization. 20 C.F.R. § 404.1527(d)(2)-(5).

The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the

treating source's opinion. 20 C.F.R. § 404.1527(d). Regardless of how much weight is given to the

treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether

the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir.

1992) citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

### 1. Dr. Clive Sinoff

Plaintiff began seeing Dr. Sinoff in February of 2004 for pain in her back, shoulders, and

knees (Tr. 188).  Dr. Sinoff noted that approximately two years prior to his exam, Sass had

underwent an MRI and was diagnosed with syringomyelia (Tr. 188).  His assessment noted that

Plaintiff had a small syrinx in her spine between T4 and T5 (Tr. 188).  However, Dr. Sinoff

commented that "[s]yringomyelia [wa]s not a painful condition and would not explain [Plaintiff's]

symptoms." (Tr. 189).  He further commented that it was his opinion that Plaintiff's syringomyelia

was an incidental MRI finding that did not have any current clinical manifestation (Tr. 189).

Nevertheless, he opined that Plaintiff appeared to have a sprain and strain of her cervical and

thoracic spine, and continued her prescription for OxyContin, Alprazolam, and Methadone, and also

prescribed her Escitalopram and Trazodone (Tr. 189).  Dr. Sinoff did not note any abnormalities in

Plaintiff's knees.

The Court finds that the ALJ properly addressed Dr. Sinoff's findings in his written decision

(Tr. 14).  As noted by the ALJ, Dr. Sinoff opined that he did not believe that Plaintiff's diagnosis

would effect the use of her upper extremities, and that syringomyelia was not a painful condition and

wouldn't explain Plaintiff's pain (Tr. 14, 189).   Although, Plaintiff argues that the ALJ did not

articulate a valid basis for rejecting the opinions of her treating physicians, Plaintiff has come

forward with no proof that ALJ Stanley rejected Dr. Sinoff's opinions.  The ALJ's duty to give good

reasons explaining the weight he gave to Plaintiff's treating sources' opinions only applies when the

ALJ determines that the treating source's opinion is not entitled to controlling weight.  Contrary to

Plaintiff's assertions, the ALJ's RFC is consistent with Dr. Sinoff's opinions.  Nothing in Dr.

Sinoff's report restricts Plaintiff's ability to perform sedentary work.  Although Dr. Sinoff noted that

Plaintiff experienced some pain, the ALJ remarked that Dr. Sinoff's report reveals that Plaintiff was

doing well and had a stable musculoskeletal condition (Tr. 14).  Accordingly, there is nothing in the

ALJ's decision to suggest that he did not give Dr. Sinoff's opinion significant weight.  Therefore,

the Court rejects Plaintiff's assertion that the ALJ was required to state good reasons for rejecting

Dr. Sinoff's opinions.  Rather, the Court finds that the ALJ's RFC is consistent with Dr. Sinoff's

findings.

## 2. Dr. James Dambrogio

Dr. James Dambrogio's treatment notes reveal that he began treating Sass as early as July

of 2006 (Tr. 315-21).  In a treatment record dated November 3, 2006, Dr. Dambrogio commented

that Plaintiff had a long-standing history of back problems (Tr. 315).  He further noted that Plaintiff

was taking OxyContin, Xanax, and Methadone to treat her conditions (Tr. 315).  Dr. Dambrogio's

physical examination of Plaintiff "revealed rigidity and spasm of the erector spinae in the mid-

thoracic area, with the intra and supraspinous ligaments tender to palpation[]" (Tr. 315).  He

diagnosed Sass with degenerative disc disease of the lumbar spine and ordered her to continue her

medication.   The treatment notes also stated that Sass was able to function on a daily basis.

Notwithstanding this finding, Dr. Dambrogio opined that Sass was "totally and permanently impaired from any gainful activity[]" and was unable to lift more than five pounds (Tr. 315). However, he also opined that Plaintiff maintained the ability to drive, and showed no adverse effects from her injury or medication.  On September 21, 2007, Dr. Dambrogio discharged Plaintiff from his care due to her use of illicit drugs (Tr. 343).  Treatment notes show that prior to discharging Sass from his care, Dr. Dambrogio had previously warned Sass that if she continued using drugs he would discontinue her care (Tr. 347).

ALJ Stanley rejected Dr. Dambrogio's finding that Plaintiff was totally disabled (Tr. 14-15). Plaintiff's argues that the ALJ should have articulated good reasons for assigning less than controlling weight to the doctor's opinion.  The Court finds that the ALJ's decision to assign less weight to Dr. Dambrogio's opinion was supported by the record.  The Court also rules that ALJ Stanley  provided an adequate explanation of the reasons justifying the weight he assigned to Dr. Dambrogio's opinion.

Initially, it is worth noting that Dr. Dambrogio's opinions were not entitled to controlling weight.  The opinions of a treating source are only entitled to such weight when they are 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" _Wilson_, 378 F.3d at 544 (*citing* 20 C.F.R. § 404.1527(d)(2)).  Here, the ALJ found that Dr. Dambrogio's opinions were both not well-supported and inconsistent with other evidence in the record.  The ALJ's written decision adequately explained his reasons for discounting Dr. Dambrogio's opinions in satisfaction of the "good reasons" requirement of 20 C.F.R. § 404.1527(d).

ALJ Stanley provided several reasons for the weight he assigned to Dr. Dambrogio's findings.  For example, ALJ Stanley noted that Dr. Dambrogio's treatment records did not support his assessment of total disability (Tr. 15).  Instead, Dr. Dambrogio's records revealed that Plaintiff's pain was significantly reduced by the use of prescription pain medication.  Before taking medication, Plaintiff described her pain as being at a level eight on a scale of one to ten, ten signifying the most pain; whereas, she rated her pain at a level four after taking medication (Tr. 347). Dr. Dambrogio's treatment notes also state that Sass' "medication is working well, [Plaintiff] has no complaints[]" (Tr. 319).  Additionally, Dr. Dambrogio's notes do not indicate that Sass had any complications with ambulation.  ALJ Stanley also explained that Dr. Dambrogio did not report any serious neurological compromise supporting a finding of total disability (Tr. 14).

ALJ Stanley noted that Dr. Dambrogio's assessment was inconsistent with the medical opinions offered from Drs. Sinoff, Degli, and Massullo (Tr. 15).  The record evidences that there were portions of Dr. Dambrogio's assessment that did not coincide with these medical opinions.  Dr. Sinoff acknowledged that Plaintiff suffered from a possible sprain and strain of her cervical and thoracic spine and prescribed Plaintiff strong pain medication as did Dr. Dambrogio, however, Dr. Sinoff opined that Plaintiff's diagnosis of syringomyelia "[wa]s not a painful condition and would not explain her symptoms[]" (Tr. 189).  He further indicated that the diagnosis appeared to be an incidental MRI finding (Tr. 189).  Thus, Dr. Dambrogio's finding of total disability was inconsistent with Dr. Sinoff's conclusions.

Dr. Donald Degli performed a psychological evaluation of Plaintiff on August 10, 2006 (Tr. 286-88).  At the conclusion of the evaluation, Dr. Degli opined that Plaintiff was only mildly impaired in her ability to work (Tr. 288).  Plaintiff correctly notes that Dr. Degli's assessment only

9

addressed Plaintiff's mental faculties and did not render any opinion regarding the alleged pain from

which Plaintiff was suffering.  Thus, it is unclear to the Court why the ALJ found that Dr.

Dambrogio's opinion was contradicted by Dr. Degli's report.  Presumably, ALJ Stanley was

contrasting Dr. Degli's opinion that Plaintiff's ability to work was only mildly impaired with Dr.

Dambrogio's opinion that Plaintiff was totally impaired.  Regardless, Dr. Degli's opinion was

limited to Plaintiff's mental faculties, and therefore, would not be in conflict with Dr. Dambrogio's

opinion regarding her physical capabilities.  Accordingly, the ALJ erred by discounting Dr.

Dambrogio's opinion on this basis.

Dr. Dambrogio's assessment is also in stark contrast to Dr. Massullo's findings.  Dr.

Massullo noted that Plaintiff indicated she was able to "get[] along with her normal daily activities

'good[,]'" drove, walked up and down stairs, slept eight hours each night, and did not use any

ambulatory device (Tr. 304-05).  After examining Sass, Dr. Massullo opined that Plaintiff

"appear[ed] to be able to do work related physical activities such as sitting, standing, walking,

lifting, carrying, handling objects, hearing, speaking and traveling." (Tr. 307).  Conversely, Dr.

Dambrogio limited Plaintiff to lifting no more than five pounds, and further indicated that she could

not bend, stoop or lift[2] (Tr. 315).

It is also important to highlight that Dr. Dambrogio's treatment record relied upon by

Plaintiff was dated November 3, 2006 (Tr. 315), just over two months after Dr. Massullo saw Sass.

It is hard to understand how Plaintiff's condition could deteriorate so severely – from having the

---

[2]Dr. Dambrogio's opinion is internally inconsistent because he first indicated that Plaintiff could not lift anything greater than five pounds, but subsequently stated that lifting was "totally out of the question" (Tr. 315).  The Court assumes that he meant that Plaintiff is totally unable to lift anything greater than five pounds.  While the Court notes this discrepancy, it is not necessary for the Court to resolve this conflict because it is not dispositive.

ability to sit, stand, walk up and down steps, lift, and carry and handle objects as reported by Dr. Massullo (Tr. 307) – to being totally and permanently impaired from any gainful employment as reported by Dr. Dambrogio – in a span of two months (Tr. 315).  This is especially true considering that Dr. Dambrogio's treatment notes in September, following Dr. Massullo's visit, do not reference any clinical testing to support a finding that Plaintiff was totally and permanently disabled (Tr. 316-17).  In addition, Plaintiff's argument that the ALJ should have disregarded Dr. Massullo's opinion because it was written three years prior to the hearing is illogical because Dr. Dambrogio's treatment notes, which Plaintiff alleges should have been given controlling weight, were also three years old at the time of the hearing.

Contrary to Plaintiff's contention that it was error for the ALJ to rely on Dr. Massullo's opinion, the Court finds otherwise.  It is well-established that an ALJ must consider and weigh each medical opinion in the record.  *Walton v. Comm'r of Soc. Sec.*, 187 F.3d 639 (Table) (6th Cir. 1999); 20 C.F.R. § 416.927(d).  After reviewing Dr. Massullo's report, it was apparent to the ALJ that Dr. Dambrogio's finding was significantly more restrictive than Dr. Massullo's recommendation.  This inconsistency provided an additional basis on which to discount Dr. Dambrogio's opinions.  Accordingly, ALJ Stanley articulated a sufficient basis to discount Dr. Dambrogio's findings as being inconsistent with those of Dr. Sinoff and Dr. Massullo.

Lastly, even if ALJ Stanley had not found that Dr. Dambrogio's opinions were inconsistent with Dr. Massullo's findings, the ALJ was not required to accept Dr. Dambrogio's finding that Sass was totally and permanently disabled.  20 C.F.R. § 416.927(e)(1).  A physician's opinion as to the ultimate question of disability is not entitled to any special deference. *Payne v. Comm'r of Soc. Sec.*, No. 08-4706, 2010 WL 4810212, at *2 (6th Cir. Nov. 18, 2010).  Aside from Dr. Dambrogio's notes,

Plaintiff has failed to point to any other relevant evidence in the record supporting a finding of disability.[3]  Contrary to Plaintiff's assertion, it is not the ALJ's burden to prove that the claimant is capable of performing work, rather, the claimant bears the ultimate burden of establishing her disabled status.  *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).  The ALJ's stated reasons for assigning less than significant weight to Dr. Dambrogio's opinions, i.e. because they were not well-supported by clinical testing and were inconsistent with substantial evidence in the record, are sufficient to satisfy the reason-giving requirement of 20 C.F.R. § 404.1527(d).  *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).  The ALJ is assigned the task of resolving conflicts in the medical evidence, *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994), therefore, ALJ's Stanley's decision to discredit portions of Dr. Dambrogio's opinion was not equivalent to him "playing doctor" as Plaintiff suggests, but rather was an exercise of his judicial duties.  The Court notes that ALJ Stanley did not totally reject Dr. Dambrogio's opinions.  In fact, the ALJ repeatedly cited to Dr. Dambrogio's treatment notes, and concurred with Dr. Dambrogio's finding that Sass did experience some restrictions with lifting, bending and stooping (Tr. 12-15).  The reasoning supplied by the ALJ was more than sufficient to explain why he gave only partial credit to Dr. Dambrogio's opinions.

### 3. Dr. Franklin

Dr. Franklin began treating Sass in December of 2007, after she was discharged from Dr. Dambrogio's care (Tr. 325-42).  His treatment records show that he saw Plaintiff as recently as November of 2008.  Dr. Franklin continued to prescribe Sass the same strong pain medications as Dr. Dambrogio.  He also recommended non-traditional treatment such as, learning Tai Chi, learning

---

[3]The Court will address the relevancy of Mr. Schiff's functional capacity examination later in its Opinion.

to play a musical instrument, and seeing a hypnotist (Tr. 333-35).  However, his notes do not state

anything regarding Plaintiff's functional abilities to perform work.  Plaintiff has failed to identify

what part of the ALJ's decision failed to give deference to Dr. Franklin's findings.  Accordingly,

to the extent that Plaintiff contests ALJ Stanley's analysis of Dr. Franklin's opinions, Plaintiff's

argument is not well-taken as Plaintiff has not cited to any discrepancy between the ALJ's RFC and

Dr. Franklin's opinions.

At some point, Dr. Franklin referred Plaintiff to see physical therapist, Mr. Randall Schiff

(Tr. 370-80).    Mr. Schiff performed a functional capacity examination ("FCE") on Sass, including

a physical examination (Tr. 370-80).  He drafted a report of his findings on April 28, 2009 (Tr. 371).

Throughout Mr. Schiff's FCE report, he indicated that he could not accurately assess Plaintiff's

abilities because she was self-limiting her ability to perform on most tasks (Tr. 374-79).  Ultimately,

he opined that Sass had "mid-T-spine discomfort with T-spine extension and arm elevation" and was

currently "functioning in the Less Than Sedentary Work Category" (Tr. 379).  However, Mr. Schiff

limited his finding by stating that it was based upon Sass self-limiting herself on several activities,

and therefore, his recommendation was probably not an accurate assessment of Plaintiff's abilities

(Tr. 379).

Portions of Plaintiff's brief cite to Mr. Schiff's FCE and question why the ALJ did not

address this evidence (Pl.'s Br. at 7-8, 13).  Yet, Plaintiff admits that the FCE was completed after

the hearing was held on February 10, 2009, and was not submitted to the ALJ, but to the Appeals

Council only.  When the Appeals Council denies review of the ALJ's decision, as in the instant case,

the reviewing court's role is to consider whether the ALJ's decision was supported by substantial

evidence based on the evidence that was before the ALJ.  See Cotton, 2 F.3d at 696.  42 U.S.C. §

405(g) permits a court to order remand for consideration of new evidence only when the claimant has come forward with evidence that is new and material, and good cause exists for the claimant's failure to include the evidence in a prior proceeding. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711-13 (6th Cir. 1988). Plaintiff has failed to demonstrate that these three requirements are met in order for this Court to issue a remand based upon consideration of Mr. Schiff's report. As a consequence, Mr. Schiff's report will not factor into this Court's review of ALJ Stanley's decision.

### B. Plaintiff's Credibility

Next, Plaintiff argues that substantial evidence does not support the ALJ's discounting of her credibility regarding the severity of her symptoms. Upon review of the ALJ's written decision, the Court finds that the ALJ's credibility determination was supported by the record. This circuit follows a two-step process in evaluating a claimant's subjective complaints of disabling pain. 20 C.F.R. § 416.929(a); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). First, the ALJ must determine whether the claimant has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers*, 486 F.3d at 247. Second, if such an impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.*; *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009). The factors that the ALJ considers in making this determination include: statements from the claimant and the claimant's treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the

14

claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186.

It is important to note that on review this Court must accord great deference to the ALJ's credibility determinations. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). This deference standard is appropriate because the ALJ had the opportunity to observe Plaintiff's demeanor while testifying. *Id. citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Despite the heightened deference that the reviewing court must afford the ALJ regarding credibility determinations, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *White*, 312 F. App'x at 788.

In the case *sub judice*, Plaintiff testified that she was unable to perform housework, cook, attend church or other types of religious services, participate in any hobbies, or sit in an office-type chair for any length of time (Tr. 36-39). She described her typical day as laying in her recliner watching television, taking breaks to stand up and walk when she becomes uncomfortable from her pain (Tr. 36, 39). She stated that she was most comfortable lying down or reclining, and that she woke up at least six times each night (Tr. 39). Sass also testified that she suffered from migraine headaches roughly three to four times a week (Tr. 40).

ALJ Stanley applied the two-part test and at step two concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible (Tr. 14). He provided several reasons for discrediting Plaintiff's testimony. First, the ALJ noted that Plaintiff's testimony at the hearing was not consistent with the medical evidence. He began by noting that Dr. Sinoff remarked that Plaintiff's "small syrinx spine would not cause changes in her

15

upper extremities and [wa]s generally not a painful condition that would explain [Plaintiff's] symptoms" (Tr. 14).  In addressing Plaintiff's claims of migraine headaches, ALJ Stanley noted differences between Plaintiff's testimony and what the medical evidence revealed.  For instance, the ALJ commented that Dr. Dambrogio's treatment records indicated that Sass consistently denied experiencing headaches (Tr. 12, 314-21).  And, while Plaintiff reported migraine headaches to Dr. Massullo and once to Dr. Sinoff, neither doctor opined that Plaintiff's headaches were so severe as to cause a neurological impairment.

Next, the ALJ considered the discrepancies in the record regarding Plaintiff's daily activity level.  Although Plaintiff testified that she did not do much more than lie down and watch television, there was conflicting evidence in the record.  Plaintiff reported to Dr. Massullo that she could drive and described her ability to perform daily activities as being "good", although it was difficult for her to perform some chores, such as pulling weeds (Tr. 304-05).  Likewise, Dr. Dambrogio's treatment records state "[p]atient is able to function on a daily basis" and that Sass was "able to operate a motor vehicle" (Tr. 315).  ALJ Stanley, also pointed out that Dr. Degli's assessment confirmed that Sass was able to manage household duties (Tr. 287).  Also troubling to the ALJ, was the fact that while Sass testified that she could not sit, stand or walk for extended periods of time due to her pain, her demeanor at the hearing showed "no signs of distress and [she] was able to present her case in a reasonable fashion[]" (Tr. 15).

Additionally, Plaintiff's reported sleeping habits differentiated from the record evidence.  Sass's hearing testimony indicated that she woke up at least six times each night.  However, she reported to Dr. Massullo that she slept eight hours each night, and the physician's notes do not mention that Sass experienced any problems with sleeping (Tr. 305).

16

Plaintiff's reliance on case law suggesting that a claimant's ability to perform some daily activities is not determinative of whether the claimant is disabled, is misplaced.  To begin, Plaintiff mischaracterized the Sixth Circuit's ruling in *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279 (6th Cir. 1985).  In that case the claimant testified that she was more limited than what her treating physician had indicated in his report. *Damron*, 778 F.2d 281.  The Sixth Circuit ruled that "[b]ecause of the conflict between plaintiff's testimony and the report of her treating physician as to the limitations on her activities, substantial evidence supported the ALJ's refusal to accept plaintiff's testimony." *Id.*  Although the court remanded the case, it did so because it found that the ALJ had erred in his application of the medical-vocational grid. *Id.* at 282-83.  As such, *Damron* appears to support the ALJ's decision to discredit Plaintiff's testimony because it was inconsistent with portions of Drs. Massullo's and Dambrogio's opinions.

The remaining two cases which Plaintiff cites, *Nettles v. Schweiker*[4] and *Cohen v. Sec'y of Health & Human Servs.*,[5] are distinguishable.  In both of those cases the court concluded that there was ample medical evidence in the record supporting the claimant's subjective complaints of pain, even though the claimant retained the ability to perform some daily activities. *Nettles*, 714 F.2d at 837; *Cohen*, 964 F.2d at 528-29.  The issue, is not whether Sass was able to do certain daily activities; instead, the issue is whether Plaintiff's medical condition coupled with her other symptoms and pain associated with the condition, rendered her disabled. *See Cohen*, 964 F.2d at 531.  Unlike in *Nettles* and *Cohen*, Plaintiff's record does not present overwhelming evidence that her condition caused disabling symptoms or pain.  The only evidence in the record supporting

---

[4]714 F.2d 833 (8th Cir. 1983).

[5]964 F.2d 524 (6th Cir. 1992).

Plaintiff's claim of total disability is Dr. Dambrogio's treatment note dated November 3, 2006 (Tr. 315), which the ALJ determined was not entitled to controlling weight because it was not well-supported by clinical findings and was inconsistent with substantial evidence in the record.

The inconsistencies between Plaintiff's testimony and the medical evidence mitigate against finding that Plaintiff's pain was disabling. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). They also cast doubt on the veracity of Plaintiff's testimony and imply that Plaintiff may not be as restricted as she purports. In addition, ALJ Stanley noted Plaintiff's failure to comply with Dr. Dambrogio's medical treatment, as demonstrated by her use of illicit drugs, ultimately discharging her from his care (Tr. 15). Sass' argument that the ALJ found her testimony incredible based on a "gut feeling" the ALJ had that Sass was doing more than that to which she testified, is also baseless (Pl.'s Br. at 18). The ALJ thoroughly explained the reasons why he was discrediting Plaintiff's testimony in his decision, as outlined above. Accordingly, the ALJ's decision to discredit her testimony was supported by the evidence in the record.

Throughout, Plaintiff's brief, she emphasized that each of her treating physician's prescribed her strong narcotic medication. Plaintiff purports that her use of strong medication was indicative of her disabled status. While the Court agrees that the use of strong pain medication, in some cases, may be supportive of Plaintiff's assertion of disabling pain, Plaintiff has failed to cite any case law indicating that such use is the determinative factor in deciding a claimant's disability status. Indeed, the ALJ acknowledged that Plaintiff "obviously experience[d] some pain and ha[d] physical limitations associated with her musculoskeletal conditions," as demonstrated by her use of medication such as OxyContin and Methadone (Tr. 15). However, ALJ Stanley reasonably concluded that Plaintiff experienced relief from her pain with the use of the medication, and that it

18

did not impair her ability to work on a sustained basis (Tr. 14-15). Dr. Dambrogio also observed

that Plaintiff's pain was reduced by the use of medication (Tr. 318, 347, 351, 355, 360, 364-68).

Thus, Plaintiff's use of heavy pain medication was not determinative of whether she was disabled.

*See Hall Garcia v. Comm'r of Soc. Sec.,* No. 09-cv-1030, 2010 WL 1904012, at *5 (W.D. Ark. May

10, 2010) (Plaintiff's use of strong medication did not support her claim of disability because she

did not comply with her treatment regimen.). Finding that the ALJ's credibility determination is

well-supported by the record, the Court declines order a remand for further review of this issue. *See*

*Moses v. Comm'r of Soc. Sec.*, No. 08-4626, 2010 WL 4536969, at *3-4 (6th Cir. Nov. 3, 2010).

### C. Plaintiff's Ability To Perform Past Work

In what appears to be a last ditch effort to seek remand, Plaintiff maintains that the ALJ's

decision that Sass had the RFC to perform her past relevant work was not supported by substantial

evidence. Essentially, Plaintiff avers the same arguments previously raised in support of her claim

here. Because the Court thoroughly addressed Plaintiff's arguments in the proceeding portions of

its Opinion, it declines to fully restate its rulings on those issues now. In brief, the Court finds that

ALJ Stanley made no error concerning his review of the opinions offered by Plaintiff's treating

physicians, or in assessing Plaintiff's credibility. As mentioned above, there are no clinical tests or

findings which support Dr. Dambrogio's opinion that Plaintiff was totally disabled. Additionally,

the Court finds that the ALJ reasonably rejected Plaintiff's subjective allegations of disabling pain

associated with her condition. Because there is substantial evidence in the record to support the

ALJ's finding that Plaintiff is capable of performing the full range of sedentary work, it is evident

that Plaintiff would be capable of returning to her prior work as a secretary, a position Plaintiff

admits is categorized as sedentary work under the Dictionary of Occupational Titles. *See Walters*,

19

127 F.3d at 532.  The ALJ's decision may not be disturbed simply because there is substantial evidence in the record supporting a different conclusion.  *See Mullen v. Bown,* 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella, supra,* 708 F.2d at 1059.  Although the VE testified that a person with Plaintiff's reported symptoms and pain would not be able to perform work on a full time basis, the hypothetical posed to him contained limitations which the ALJ found not to be supported by the record.  Because an ALJ is not required to accept a claimant's unsubstantiated complaints as true, the VE's answer to the hypothetical was not persuasive.  *See Blancha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir. 1990).

## V.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: February 7, 2011.

20